IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Gregg B. Colton, on behalf of himself and a class of similarly situated persons, ) ) ) | |
| Plaintiff, ) ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS** |
| vs. ) ) ) | |
| Lime Rock Resources GP V, L.P., ) Lime Rock Resources III-A GP, LLC, ) Lime Rock Resources III-A, L.P., ) Lime Rock Resources IV-A GP, LLC, ) Lime Rock Resources IV-A, L.P., ) Company, a North Dakota corporation; ) Lime Rock Resources Operating ) Company, Inc., and ) Lime Rock Resources V-A, L.P., ) ) | Case No. 1:22-cv-123 |
| Defendants. ) ) | |

Before the Court is the Defendants' motion to partially dismiss the first amended complaint and motion to strike class allegations filed on April 7, 2023. See Doc. No. 40. The Plaintiff filed a response in opposition to the motion on April 13, 2023. See Doc. No. 42. The Defendants filed a reply on April 27, 2023. See Doc. No. 43. The Defendants filed a notice of supplemental authority on August 28, 2023. See Doc. No. 46. For the reasons set forth below, the motion for partial dismissal and the motion to strike class allegations are granted.

I. **BACKGROUND**

This action is brought on behalf of the Plaintiff, Gregg B. Colton ("Colton"), and two proposed classes of similarly situated persons. The Defendants (collectively, "Lime Rock"),

1

operate numerous oil and gas wells in North Dakota. As the operator of those wells, Lime Rock produces and markets oil, gas, and related hydrocarbons. Lime Rock then remits sales proceeds to parties who own interest in a given well, including royalty owners who are entitled to a share of production under an oil and gas lease. Colton owns a royalty interest under an oil and gas lease concerning property located in Dunn County, North Dakota, where Lime Rock operates a well.

The first amended complaint alleges Lime Rock made untimely payments to Colton and the class members of Subclass I without paying 18% interest as required by N.D.C.C. § 47-16-39.1.  Colton defines Subclass I as:

> All persons and entities owning mineral interests in North Dakota wells operated by Lime Rock who, at any time since July 15, 2016, have: (1) received mineral interest payments from Lime Rock on a date which was more than one hundred fifty days after the oil or gas was produced and marketed by Lime Rock from North Dakota wells; and (2) whose payment from Lime Rock did not include the eighteen percent per annum interest payment required under N.D.C.C. § 47-16-39.1.
>
> Excluded from the Class are: (1) Lime Rock, its affiliates, predecessors, employees, officers, and directors; and (2) agencies, departments, or instrumentalities of the United States of America or the State of North Dakota; and (3) persons who own mineral interests which are owned or managed by the board of university and school lands.

See Doc. No. 36, p. 2.

The first amended complaint alleges Lime Rock improperly reduced royalties owed to Colton and the class members of Subclass II by offsetting the negative value of excess natural gas expenses against royalties attributable to the production of oil. Colton defines Subclass II as:

> All persons and entities to whom Lime Rock has paid or was obligated to pay royalties on oil or natural gas produced from wells located in the State of North Dakota since March 20, 2013 pursuant to an oil and gas lease or overriding royalty agreement where Lime Rock's post-production expenses for gas were deducted from a royalty owner's oil royalties.

>Excluded from the Class are: (1) Lime Rock, its affiliates, predecessors, employees, officers, and directors; and (2) agencies, departments, or instrumentalities of the United States of America or the State of North Dakota.

See Doc. No. 36, p. 2.

Colton initiated this action on July 19, 2022. See Doc. No. 1. On March 20, 2023, Colton filed its first amended complaint. On April 7, 2023, Lime Rock filed a motion to partially dismiss the Plaintiff's first amended complaint and a motion to strike class allegations. See Doc. No. 40. Lime Rock requests the Court dismiss the declaratory judgment claims for Subclass I and Subclass II, dismiss the claim for 18% interest for overriding royalty owners for Subclass II, and dismiss the claim for 6% prejudgment interest on the statutory 18% interest sought. Lime Rock also requests the Court strike the Subclass I and the Subclass II class allegations.

## II.   STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted. In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must show that success on the merits is more than a "sheer possibility." Id. A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept all factual allegations as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." Id. at 681.

Detailed factual allegations are not necessary under the Rule 8 pleading standard, rather a plaintiff must set forth grounds of its entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders a naked assertion devoid of further factual enhancement." Ashcroft, 556 U.S. at 678 (2009). The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Dismissal will not be granted unless it appears beyond doubt the plaintiff can prove no set of facts entitling plaintiff to relief. Ulrich v. Pop Cnty, 715 F.3d 1054, 1058 (8th Cir. 2013).

### III.    LEGAL DISCUSSION

Colton brings this case on behalf of himself and class members pursuant to N.D.C.C. § 47-16-39.1, which governs the obligation of an operator arising under an oil and gas lease to pay royalties to mineral owners and a mineral owner's assignees. N.D.C.C. § 47-16-39.1 provides:

> If the operator under an oil and gas lease fails to pay oil or gas royalties to the mineral owner or the mineral owner's assignee within one hundred fifty days after oil or gas produced under the lease is marketed and cancellation of the lease is not sought or if the operator fails to pay oil or gas royalties to an unleased mineral interest owner within one hundred fifty days after oil or gas production is marketed from the unleased mineral interest owner's mineral interest, the operator thereafter shall pay interest on the unpaid royalties, without the requirement that the mineral owner or the mineral owner's assignee request the payment of interest, at the rate of eighteen percent per annum until paid…This section does not apply if mineral owners or their assignees elect to take their proportionate share of production in kind, in the event of a dispute of title existing that would affect distribution of royalty payments, or if a mineral owner cannot be located after reasonable inquiry by the operator; however, the operator shall make royalty payments to those mineral owners whose title and ownership interest is not in dispute.

N.D.C.C. § 47-16-39.1(1).

4

A.      **MOTION TO DISMISS DECLARATORY JUDGMENT CLAIMS**

Lime Rock argues the Court lacks jurisdiction over Colton's declaratory judgment claims for Subclass I and Subclass II because Colton fails to present a case or controversy. As to Subclass I, Colton requests the Court enter a declaratory judgment determining that Lime Rock must pay the statutory 18% percent interest on all future late payments to Colton and class members. As to Subclass II, Colton requests the Court enter a declaratory judgment determining Lime Rock is required to pay royalties without deducting negative gas values on all future royalty payments to Colton and class members. Colton asserts his claim for declaratory relief for Subclass I is ripe because Lime Rock has consistently made late payments to Colton without paying 18% interest, and the probability of Lime Rock continuing this practice is real and substantial. He argues his claim for declaratory relief for Subclass II is ripe because Lime Rock has, at various times, improperly deducted post-production costs associated with Lime Rock's sale of natural gas when paying royalty owners, and the probability of Lime Rock continuing this practice is real and substantial.

The Declaratory Judgment Act authorizes federal courts to declare the rights of interested parties "[i]n a case of actual controversy." Diagnostic Unit Inmate Council v. Films Inc., 88 F.3d 651, 653 (8th Cir. 1996) (quoting 28 U.S.C. § 2201). The Declaratory Judgment Act does not provide a means for standing or relief. Mitchell v. Dakota Cty. Soc. Servs., 959 F.3d 887, 897 n. 2 (8th Cir. 2020) (citing Carson v. Pierce, 719 F.2d 931, 933 (8th Cir. 1983)).

The requirement of an "actual controversy" is imposed by Article III of the Constitution. Diagnostic Unit Inmate Council, 88 F.3d at 653. See also Steffel v. Thompson, 415 U.S. 452, 458 (1974). The Eighth Circuit has recognized that "in general, an actual controversy is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

warrant the issuance of a declaratory judgment." Diagnostic Unit Inmate Council, 88 F.3d at 653 (1996) (citations omitted). The plaintiff's claims must be ripe to seek declaratory judgment. Acuity, 2007 WL 1356919, at *5 (2007). The ripeness doctrine requires that "before a federal court may address itself to a question, there must exist a real substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." Id. (quoting Nebraska Public Power District v. MidAmerican Energy Co., 234 F .3d 1032, 1038 (8th Cir.2000)). "Because the test to determine the existence of a substantial controversy is imprecise, the decision of whether such controversy exists is made upon the facts on a case by case basis." Modern Equip. Co., 146 F. Supp. 2d at 990 (internal citations omitted). A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

      Colton's declaratory judgment claims lack a definite and concrete dispute. The claims are predicated on future contingencies. Colton's Subclass I claim assumes: 1) Lime Rock will fail to pay future royalties within 150 days of production and marketing; 2) Lime Rock will not tender 18% interest when it pays the late royalties; and 3) no justification will exist for Lime Rock's failure to pay, such as the statutory safe harbor provisions contained in Section 47-16-39.1. Colton's Subclass II claim assumes: 1) a negative gas value will occur; and 2) Lime Rock will set off the negative gas royalty against a positive oil royalty. Whether a negative gas value occurs depends upon variables such as sales prices, which may increase or decrease based upon market supply and demand. Both of Colton's declaratory judgment claims rest upon future contingencies that may not occur as anticipated or may not occur at all which makes the claims hypothetical rather than concrete.

Colton argues the declaratory judgment claims are viable because it requests the Court determine: 1) whether Lime Rock is statutorily required to pay 18% interest when it makes future late payments; and 2) whether Lime Rock is permitted to deduct the negative value associated with natural gas royalty payments from oil royalties. Colton argues these are purely legal issues. However, the resolution of these claims necessitates factual inquiries in scenarios that have yet to occur and may never occur. Accordingly, Colton's declaratory judgment claims fail to present an actual controversy and are not ripe for adjudication. Dismissal of Colton's declaratory judgment claims are warranted.

### B.     OVERRIDING ROYALTY OWNERS

Lime Rock argues Colton cannot collect the 18% statutory interest it seeks on overriding loyalty interests because Section 47-16-39.1 does not apply to overriding royalty owners. This Court has previously held Section 47-16-39.1 does not apply to overriding royalty interests. See Sandy River Res., LLC v. Hess Bakken Invs. II, LLC, 2023 WL 1801958 (D.N.D. Feb. 7, 2023). In Colton's brief in opposition to the motion to dismiss, he concedes royalty owners are not entitled to 18% statutory interest under Section 47-16-39.1. See Doc. No. 42, p. 9. Colton stated, "In the near future, Colton will seek to further amend his complaint to limit the recovery of the eighteen percent interest on his Subclass II claims only to the lessor members of Subclass II, and to request prejudgment interest for the overriding royalty owner members of Subclass II at the lower interest rate permitted by N.D.C.C. § 32-03-05." Id. Colton has yet to file a proposed second amended complaint. Accordingly, Colton failed to plead a valid claim for relief with respect to overriding mineral royalty owners.

### C. PREJUDGMENT INTEREST

Colton requests 6% prejudgment interest on the unpaid 18% interest it seeks under Section 47-16-39.1. Lime Rock contends Section 47-16-39.1 does not permit prejudgment interest to accrue on statutory interest. Lime Rock argues allowing prejudgment interest on the statutory interest would amount to awarding compound interest. The North Dakota Supreme Court determined that Section 47-16-39.1 "does not provide for compound interest." Van Sickle v. Hallmark & Assocs., Inc., 840 N.W.2d 92, 108 (N.D. 2013). When concluding the district court properly awarded simple interest, the North Dakota Supreme Court noted that "the legislature has specifically used language designating or describing when compound interest is appropriate." Id. Likewise, this Court sees nothing in Section 47-16-39.1 that would permit the award of compound interest. The Court concludes 6% prejudgment interest on the 18% interest Colton seeks is not available under Section 47-16-39.1. The Court grants Lime Rock's motion to dismiss as to the prejudgment interest Colton seeks.

### D. MOTION TO STRIKE CLASS ALLEGATIONS

Lime Rock contends the class allegations contained in the first amended complaint fail to meet the requirements of Rule 23 of the Federal Rule of Civil Procedure. Lime Rock argues class treatment is precluded in this case because some class members lack standing and the claims would require an individual examination of each proposed class member. Colton maintains the class allegations are plausible.

Colton brings this class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Rule 23(a) sets forth the prerequisites to a class action. It provides:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A district court may grant a motion to strike class allegations prior to the filing of a motion for class certification when "it is apparent from the pleadings that the class cannot be certified because unsupportable class allegations bring impertinent material into the pleading and permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." Donelson v. Ameriprise Fin. Servs., Inc., 999 F.3d 1080 (8th Cir. 2021) (internal quotation marks omitted). A class cannot be certified when it contains members who lack standing. Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1034 (8th Cir. 2010). Therefore, a class must "be defined in such a way that anyone within it would have standing." Id. "If members who lack the ability to bring a suit themselves are included in a class, the court lacks jurisdiction over their claims." Johannessohn v. Polaris Indus. Inc., 9 F.4th 981, 987 (8th Cir. 2021) (citations omitted).

### 1. SUBCLASS I

Colton's Subclass I definition contains class members that lack standing. The Subclass I class definition includes all owners who have received payments more than 150 days after the oil

or gas was produced and marketed, regardless of the reasoning for the delayed or suspended payments. Section 47-16-39.1 contains safe harbor provisions which provide that penalty interest does not accrue under certain circumstances. The statute does not apply: 1) if mineral owners or their assignees elect to take their proportionate share of production in kind; 2) in the event of a dispute of title existing that would affect distribution of royalty payments; or 3) if a mineral owner cannot be located after reasonable inquiry by the operator. N.D.C.C. § 47-16-39.1(1). By including "all persons and entities" to whom Lime Rock has not remitted royalties within 150 days, Colton's Subclass I definition necessarily includes class members whose payments were lawfully suspended due to safe harbor provisions. Such owners have not suffered any compensable injury under Section 47-16-39.1. Therefore, the Subclass I definition includes class members that lack standing. Accordingly, the Court grants the Defendant's motion to strike the class allegations as to Subclass I. Because Subclass I is stricken, the Court need not address the applicable statute of limitations for Subclass I.

### 2. SUBCLASS II

Colton's Subclass II definition fails to state a certifiable class because its membership is not ascertainable and common questions of law or fact do not predominate. Colton does not present any arguments in support of the Subclass II certification in his response to Lime Rock's motion to strike class allegations.

In *Nudell v. Burlington N. and Santa Fe Ry. Co.*, 2002 WL 1543725 (D.N.D. July 11, 2002), the court determined the proposed class and subclass lacked typicality when considering a motion for class certification. The court expressed concerns about the proposed class definitions:

> Most fundamentally, it is difficult to understand how the Court could determine whether a potential class member is in fact a class member without an

> individualized inquiry. To the contrary, the current class definition would require several factual determinations as to each potential class member. As a threshold matter, each claimant would have to establish that he or she owned land described in the definition … The essential questions here, as stated above, concern property rights. Specifically, the case would require resolution of several property-related issues: the extent of the railroads interest in the land at issue; the extent of each property owners interest; whether the defendants activities regarding laying of fiber optic cable exceeded the scope of the railroads interest vis-a-vis that of the class members; whether any legal defenses exist to bar the claim of each class member, such as consent, acquiescence, or the statute of limitations; and, finally, assuming the claims are legitimate and proven, whether and how much damages are due. The Court concludes that these decisions turn on so many individual questions that the claims of the named plaintiffs are not typical of the class.

Nudell, 2002 WL 1543725, at *1-5 (D.N.D. July 11, 2002).

Colton's proposed class presents similar problems as the class and subclass in *Nudell*. While Colton's proposed class concerns persons and entities whom Lime Rock has paid or was obligated to pay royalties on oil or natural gas produced from wells, rather than railroad interests, individual questions as to each class member remain. Examining each proposed class member's claim would require individual verification of titles and a review of the proposed class member's lease with Lime Rock. Further, Section 47-16-39.1 contains safe harbor provisions which provide that penalty interest does not accrue under certain circumstances. Colton's proposed class would require an inquiry into each member to determine whether any safe harbor provisions apply. Additionally, if claims are legitimate and proven, damages must be separately calculated for every class member. These necessary individualized determinations make Colton's claims atypical of those of other class members. The Court finds that the proposed class does not meet the Rule 23(a)(3) typicality requirement.

Beyond the typicality requirement in Rule 23(a)(3), the proposed class cannot satisfy the predominance requirement of Rule 23(b)(3). Under Rule 23(b)(3) a class action may be maintained if Rule 23(a) is satisfied and if "the court finds that the questions of law or fact common to class

11

members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In *Ebert v. General Mills*, 823 F.3d 472 (8th Cir. 2016) the Eighth Circuit Court of Appeals addressed the predominance requirement of Rule 23(b)(3). "The requirement of predominance under Rule 23(b)(3) is not satisfied if 'individual questions…overwhelm the questions common to the class.'" Id. at 478-79 (citing to Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455 (2013)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Id. at 479 (internal quotation marks omitted). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation and goes to the efficiency of a class action as an alternative to individual suits." Id. (citations omitted).

Here, Colton asserted a breach of contract claim for all class members. Under North Dakota law, the language of a contract is to govern if the language is clear. See N.D.C.C. § 9-07-02. However, Colton did not narrow Subclass II's definition to any specific contract language that is common to all leases pertaining to the class. Colton also did not specify the contractual language that Lime Rock is alleged to have breached. Thus, determination of the claims asserted on behalf of the proposed class would require each member of the proposed class to present evidence regarding their lease. The individualized issues in this case predominate over the common claim for relief by the proposed class. The proposed class lacks the cohesion necessary to warrant class

certification. Accordingly, the Court grants the Defendant's motion to strike the class allegations as to Subclass II.

## IV.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and the relevant case law.  For the reasons set forth above, the Defendants' motion to strike class allegations (Doc. No. 40) is **GRANTED**. The Defendants' motion to partially dismiss the first amended complaint (Doc. No. 40) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 16th day of April, 2024.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court
