**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Gregg B. Colton, on behalf of himself and a class of similarly situated persons, | ) ) ) | |
| Plaintiff, | ) ) | **ORDER GRANTING DEFENDANTS' MOTION TO STRIKE CLASS** |
| vs. | ) ) ) | **ALLEGATIONS** |
| Lime Rock Resources GP V, L.P., Lime Rock Resources III-A GP, LLC, Lime Rock Resources III-A, L.P., Lime Rock Resources IV-A GP, LLC, Lime Rock Resources IV-A, L.P., Company, a North Dakota corporation; Lime Rock Resources Operating Company, Inc., and Lime Rock Resources V-A, L.P., | ) ) ) ) ) ) ) ) ) ) | Case No. 1:22-cv-123 |
| Defendants. | ) ) | |

_____

Before the Court is the Defendants' motion to strike class allegations filed on February 27, 2025. See Doc. No. 70. The Plaintiff filed a response in opposition to the motion on March 20, 2025. See Doc. No. 72. The Defendants filed a reply on April 10, 2025. See Doc. No. 75. For the reasons set forth below, the motion to strike class allegations is granted.

I.    **BACKGROUND**

This action is brought on behalf of the Plaintiff, Gregg B. Colton ("Colton"), and two proposed classes of similarly situated persons. The Defendants (collectively, "Lime Rock"), operate numerous oil and gas wells in North Dakota. As the operator of those wells, Lime Rock produces and markets oil, gas, and related hydrocarbons. Lime Rock then remits sales proceeds to

parties who own interest in a given well, including royalty owners who are entitled to a share of production under an oil and gas lease. Colton owns a royalty interest under an oil and gas lease concerning property located in Dunn County, North Dakota, where Lime Rock operates a well.

The second amended complaint alleges Lime Rock made untimely payments to Colton and the class members of Subclass I without paying 18% interest as required by N.D.C.C. § 47-16-39.1. Colton defines Subclass I as:

> All persons and entities owning mineral interests in North Dakota wells operated by Lime Rock who, at any time since July 19, 2016, have: (1) received one or more royalty payments or other mineral interest payments from Lime Rock on a date which was more than one hundred fifty days after the oil or gas produced by Lime Rock from a North Dakota well subject to the mineral owner's interest was marketed; and (2) as to any such payment, Lime Rock did not pay the eighteen percent per annum interest required under N.D.C.C. § 47-16-39.1.
>
> Excluded from the Class are: (1) Lime Rock, its affiliates, predecessors, employees, officers, and directors; (2) the United States of America; (3) persons who own mineral interests only in wells operated by Lime Rock in North Dakota which are managed by the board of university and school lands; (4) persons who have been members of the board of university and school lands at any time since July 19, 2016; (5) mineral owners who elected to take their proportionate share of production from an Lime Rock operated well in kind; (6) mineral owners who did not receive royalties from Lime Rock because such mineral owners could not be located after reasonable inquiry; (7) mineral owners to whom Lime Rock furnished with written notice of a title dispute pursuant to N.D.C.C. § 47-16-39.4, and whose payments were suspended as a result of such title dispute; and (8) overriding royalty interests and working interests.

See Doc. No. 69, p. 2.

The second amended complaint alleges Lime Rock violated oil and gas leases by reducing royalties owed to Colton and the class members of Subclass II by offsetting the negative value of excess natural gas expenses against royalties attributable to the production of oil. Colton defines Subclass II as:

> All persons and entities to whom Lime Rock has paid, or was obligated to pay, royalties on oil or natural gas produced from wells located in the State of North Dakota since July 19, 2016, pursuant to an oil and gas lease where Lime Rock's

post-production expenses for natural gas were deducted from a royalty owner's oil royalties.

Excluded from the Class are: (1) Lime Rock, its affiliates, predecessors, employees, officers, and directors; and (2) agencies, departments, or instrumentalities of the United States of America or the State of North Dakota; and (3) mineral interest owners or their assignees whose leases expressly authorize Lime Rock to deduct post-production costs for natural gas in Lime Rock's calculation of royalty payments on oil.

See Doc. No. 69, p. 3.

Colton initiated this action on July 19, 2022. See Doc. No. 1. On March 20, 2023, Colton filed his first amended complaint. On April 7, 2023, Lime Rock filed a motion to partially dismiss the Plaintiff's first amended complaint and a motion to strike class allegations. See Doc. No. 40. On April 16, 2024, the Court granted the motion to partially dismiss and granted the motion to strike Subclass I and Subclass II allegations. See Doc. No. 47. On January 31, 2025, Colton filed its second amended complaint, which contains amended Subclass I and Subclass II class allegations. On February 27, 2025, the Defendants filed a motion to strike the class allegations in the second amended class action complaint. See Doc. No. 70. The motion has been fully briefed and is ripe for consideration.

## III.   LEGAL DISCUSSION

Colton brings this case on behalf of himself and class members pursuant to N.D.C.C. § 47-16-39.1, which governs the obligation of an operator arising under an oil and gas lease to pay royalties to mineral owners and a mineral owner's assignees. N.D.C.C. § 47-16-39.1 provides:

If the operator under an oil and gas lease fails to pay oil or gas royalties to the mineral owner or the mineral owner's assignee within one hundred fifty days after oil or gas produced under the lease is marketed and cancellation of the lease is not sought or if the operator fails to pay oil or gas royalties to an unleased mineral interest owner within one hundred fifty days after oil or gas production is marketed from the unleased mineral interest owner's mineral interest, the operator thereafter

shall pay interest on the unpaid royalties, without the requirement that the mineral owner or the mineral owner's assignee request the payment of interest, at the rate of eighteen percent per annum until paid…This section does not apply if mineral owners or their assignees elect to take their proportionate share of production in kind, in the event of a dispute of title existing that would affect distribution of royalty payments, or if a mineral owner cannot be located after reasonable inquiry by the operator; however, the operator shall make royalty payments to those mineral owners whose title and ownership interest is not in dispute.

N.D.C.C. § 47-16-39.1(1).

Colton brings this class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Rule 23(a) sets forth the prerequisites to a class action. It provides:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, the Eighth Circuit Court of Appeals recognizes an implicit requirement of Rule 23 that "a class must be adequately defined and clearly ascertainable." McKeage v. TMBC, LLC, 847 F.3d 992, 998 (8th Cir. 2017) (internal quotation marks omitted).

A district court may grant a motion to strike class allegations prior to the filing of a motion for class certification when "it is apparent from the pleadings that the class cannot be certified because unsupportable class allegations bring impertinent material into the pleading and permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." Donelson v. Ameriprise Fin. Servs., Inc., 999 F.3d 1080 (8th Cir. 2021) (internal quotation marks omitted). A class cannot be certified when it

contains members who lack standing. <u>Avritt v. Reliastar Life Ins. Co.</u>, 615 F.3d 1023, 1034 (8th Cir. 2010). Therefore, a class must "be defined in such a way that anyone within it would have standing." <u>Id.</u> "If members who lack the ability to bring a suit themselves are included in a class, the court lacks jurisdiction over their claims." <u>Johannessohn v. Polaris Indus. Inc.</u>, 9 F.4th 981, 987 (8th Cir. 2021) (citations omitted).

Lime Rock contends the Plaintiff's class allegations fail to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Specifically, Lime Rock argues Colton cannot meet the typicality, predominance, and ascertainably requirements because the proposed class definitions would require an individual examination for each and every class member and payment. The Plaintiff argues the proposed class definition meets all of Rule 23's requirements.

Lime Rock cites to recent orders by this Court that struck substantively similar class allegations. This Court concluded that classes seeking interest under Section 47-16-39.1 could not satisfy Rule 23's typicality and predominance requirements in *Hystad Ceynar Minerals, LLC v. XTO Energy, Inc.*, 2025 WL 522550 (D.N.D. Feb. 18, 2025), *Hystad Ceynar Mins., LLC v. Whiting Oil & Gas Corp.*, 2023 WL 3467461 (D.N.D. May 15, 2023), and *Penman & Adelante Oil & Gas, LLC v. Hess Bakken Invs. II, LLC*, 2024 WL 3792011 (D.N.D. Aug. 13, 2024). Specifically, the Court found that the class allegations required an individual examination of each class member. In this case, the Plaintiff's class allegations present similar typicality and predominance issues as the classes in *XTO*, *Whiting*, and *Penman*. Further, the Court previously struck Colton's class allegations contained in his first amended complaint for failure to satisfy the requirements of Rule 23(b)(3). Colton's class definitions in his second amended complaint do not cure deficiencies previously recognized by the Court. The proposed class allegations in the second amended complaint require an individual examination of each class member and payment, which prevents

class certification. Based on the pleadings in this case and the relevant case law, the Court finds no reason to depart from its recent rulings.

## A.    SUBCLASS I

Colton's Subclass I definition is nearly identical to the proposed class definition in *Hystad Ceynar Minerals, LLC v. XTO Energy, Inc.* The Court struck the class definition in *XTO Energy* for failure to meet the typicality and predominance requirements of Rule 23. Similar to *XTO Energy*, Subclass I cannot meet the Rule 23 requirements.

### 1.    TYPICALITY

Under Rule 23(a)(3), the claims of the representative must be typical of the claims of the class. "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977). However, "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." Elizabeth M. v. Montenez, 458 F.3d 779, 787 (8th Cir. 2006).

In *Nudell v. Burlington N. and Santa Fe Ry. Co.*, 2002 WL 1543725 (D.N.D. July 11, 2002), the court determined the proposed class and subclass lacked typicality when considering a motion for class certification. The court expressed concerns about the proposed class definitions:

> Most fundamentally, it is difficult to understand how the Court could determine whether a potential class member is in fact a class member without an individualized inquiry. To the contrary, the current class definition would require several factual determinations as to each potential class member. As a threshold matter, each claimant would have to establish that he or she owned land described in the definition … The essential questions here, as stated above, concern property rights. Specifically, the case would require resolution of several property-related issues: the extent of the railroads interest in the land at issue; the extent of each

> property owners interest; whether the defendants activities regarding laying of fiber optic cable exceeded the scope of the railroads interest vis-a-vis that of the class members; whether any legal defenses exist to bar the claim of each class member, such as consent, acquiescence, or the statute of limitations; and, finally, assuming the claims are legitimate and proven, whether and how much damages are due. The Court concludes that these decisions turn on so many individual questions that the claims of the named plaintiffs are not typical of the class.

Nudell, 2002 WL 1543725, at *1-5 (D.N.D. July 11, 2002). When comparing the class definition to Nudell, the Court in *Hystad Ceynar Mins., LLC v. Whiting Oil & Gas Corp* found:

> While Hystad's proposed class concerns persons and entities owning mineral interests in wells, rather than railroad interests, individual questions as to each class member remain. Examining each proposed class member's claim would require verification of the ownership interests and a review of their lease with Whiting to determine whether the member holds the interest required to fall within N.D.C.C. § 47-16-39.1.

Whiting, 2023 WL 3467461, at *4.

In *XTO Energy*, the Court concluded that each proposed class member's claim would require verification of ownership interest and a review of their lease with XTO Energy to determine whether the member holds the interest required to fall within N.D.C.C. § 47-16-39.1, similar to *Nudell* and *Whiting*. Further, evidence would need to be presented regarding the date the oil and gas was marketed for every payment to determine when the payment falls within the parameters of N.D.C.C. § 47-16-39.1. The class definition in this case, which is nearly identical to the *XTO Energy* definition, presents the same typicality issues.

In *XTO Energy* the Court also noted that the proposed class would require an inquiry for every class member to determine whether any safe harbor provisions of N.D.C.C. § 47-16-39.1 apply. Colton's Subclass I definition presents the same issue. As it pertains to the safe harbor provisions, the proposed class definition excludes:

> (5) mineral owners who elected to take their proportionate share of production from a Lime Rock operated well in kind; (6) mineral owners who did not receive royalties from Lime Rock because such mineral owners could not be located after

7

reasonable inquiry; (7) mineral owners to whom Lime Rock furnished with written
notice of a title dispute pursuant to N.D.C.C. § 47-16-39.4, and whose payments
were suspended as a result of such title dispute.

<u>See</u> Doc. No. 69, p. 2. Accordingly, individual inquires would be necessary for every payment to

determine whether any circumstances apply as to the particular payment that would preclude a

royalty owner from receiving statutory interest under N.D.C.C. § 47-16-39.1.

Additionally, the Court in *XTO Energy* recognized typicality issues pertaining to the

calculation of damages.

> [I]f proposed class members' claims are legitimate and proven, damages must be
> calculated separately for every member because the interest due to each member
> will vary based on when they received each late payment, how much in royalties
> were due, and whether one of the safe harbor provisions applied for some, but not
> all, of the time royalties were suspended (e.g. a title dispute resolved partway
> through the suspense period). These inherently individualized determinations make
> the Plaintiff's claims atypical of those of other class members.

<u>XTO Energy, Inc.</u>, 2025 WL 522550, at *4. In this case, Colton contends the safe harbor

exemptions and the need to verify property interests do not defeat Rule 23's requirements because

members are ascertainable and can be identified from Lime Rock's business records. Even if the

class members are ascertainable through discovery, the typicality issues remain. Given the many

individual questions and the necessity to complete a payment-by-payment analysis, the claims of

Colton are not typical of the class. Accordingly, the Court concludes the proposed class definition

does not meet the Rule 23(a)(3) typicality requirement.

## 2.  <u>PREDOMINANCE</u>

Under Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and if "the

court finds that the questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Colton's proposed class fails to meet the predominance requirement of Rule 23(b)(3).

The Eighth Circuit Court of Appeals addressed the predominance requirement of Rule 23(b)(3) in *Ebert v. General Mills*, 823 F.3d 472 (8th Cir. 2016). "Rule 23(b)(3) is qualitative rather than quantitative. Thus, that there is a common question does not end the inquiry." Id. at 478. "The requirement of predominance under Rule 23(b)(3) is not satisfied if 'individual questions ... overwhelm the questions common to the class.'" Id. at 478-79 (citing to Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455 (2013)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Id. at 479 (internal quotation marks omitted). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation and goes to the efficiency of a class action as an alternative to individual suits." Id. (citations omitted).

The Court's holdings regarding the required individualized determinations that preclude a finding of typicality also preclude a finding of predominance under Rule 23(b)(3). Individual examinations for every class member are a necessary prerequisite to determining whether a particular mineral owner is a class member and whether N.D.C.C. § 47-16-39.1 applies and was violated. Colton acknowledged that individual inquiries are necessary but maintains that the individual determinations do not defeat predominance because they are manageable. See Doc. No. 72, p. 12. The Court disagrees. The verification of leases and ownership interests, the determination of the existence of safe harbor provisions, and the determination of proper notice regarding title disputes would require every proposed class member to present evidence for every

payment that allegedly falls within the class allegations. These individual determinations would be time-consuming and inefficient. The individualized issues in this case predominate over the common claim for relief by the proposed class. Accordingly, the Court grants the Defendants' motion to strike the Subclass I class allegations.

### B.     <u>SUBCLASS II</u>

Colton's Subclass II definition is substantively similar to the class definition that this Court previously struck from the first amended complaint. The Subclass II definition in the second amended complaint does not cure all deficiencies previously identified by the Court. The class definition fails to meet the Rule 23 typicality and predominance requirements.

### 1.     <u>TYPICALITY</u>

Colton asserts a breach of contract claim for all class members. Colton's class definition excludes mineral interest owners or their assignees whose leases expressly authorize Lime Rock to deduct post-production costs for natural gas in Lime Rock's calculation of royalty payments on oil. However, Colton did not limit Subclass II's definition to leases with the same or similar royalty language. While Colton now alleges that "[e]ach of the Subclass II Leases do not authorize Lime Rock to offset post-production costs for natural gas from the royalty payments on oil produced subject to the Subclass II Leases," (Doc. No. 69, p. 13), the Subclass II definition is still not tied to any particular lease language.

Under North Dakota law, the language of a contract is to govern if the language is clear. <u>See</u> N.D.C.C. § 9-07-02. Colton acknowledges there could be "countless variations of lease language." <u>See</u> Doc. No. 72, p. 14. The "inherent variability in lease language" recognized by

Colton highlights the lack of typicality in Subclass II. Colton cannot advance a collective breach of contract action on the basis of multiple different contracts. See Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331 (4th Cir. 1998) (Multiple contract actions cannot be amalgamated into one because of the possibility that a breach occurred with some class members but not with others). Even slight variations in contract language could result in differing findings for Subclass II members' breach of contract claims. In the absence of common contractual language, Colton's claims are not typical of the class he seeks to represent. Further, the individualized inquiry necessary to review and interpret every lease for every class member precludes typicality. Therefore, the Court finds the typicality requirement of Rule 23(a)(3) is not met.

## 2. PREDOMINANCE

Colton contends the precise words used to create a royalty obligation are immaterial to typicality. This Court disagrees. However, even if the typicality requirement is met, the need to review every contract defeats the predominance requirement. Colton argues the dispositive issue in Subclass II is the substance of the royalty obligation and the common question is whether Lime Rock incurred an obligation to pay royalties on oil and gas. Nevertheless, the substance of any royalty obligation arises from the lease language that Colton acknowledges involves countless variations. In the absence of common contractual language limiting the class definition, the Court would need to review and interpret every contract to determine whether the language creates the necessary type of obligation to meet the class definition, which could require resolving ambiguities. This individual determination would be necessary for each of the more than 1,500 alleged class members, some of whom may be paid under more than one lease. The individualized issues in Subclass II predominate over the common claim for relief by the proposed class. Subclass

II lacks the cohesion necessary to warrant class certification. Accordingly, the Court grants the Defendants' motion to strike the class allegations as to Subclass II.

## III.  <u>CONCLUSION</u>

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Defendants' motion to strike class allegations (Doc. No. 70) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 23rd day of July, 2025.

<u>/s/  Daniel L. Hovland</u>
Daniel L. Hovland, District Judge
United States District Court